Scott Sanborn - CA Bar #309935
The Law Office of Scott Sanborn
707 10th Ave #609
San Diego, CA 92101
Phone: (619)808-5912
Email: ss@scottsanborn.law
www.scottsanborn.law

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL DREIFORT, individually, and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>DJO Global, Inc.;<br>DJO, LLC; and<br>DOES 1-20,<br><br>      Defendants. | Case No.: **'18 CV 2393 BTM KSC**<br><br>CLASS ACTION COMPLAINT:<br><br>(1) FRAUD<br>(2) CALIFORNIA'S FALSE ADVERTISING LAW (BUS. & PROF. CODE § 17500 ET SEQ.)<br>(3) CALIFORNIA'S UNFAIR COMPETITION LAW (BUS. & PROF. CODE § 17200 ET SEQ.)<br>(4) CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT (CIV. CODE § 1750 ET SEQ.)<br>(5) PRODUCT LIABILITY<br><br>DEMAND-JURY TRIAL |

1.    Plaintiff Daniel Dreifort, individually and on behalf of all others similarly situated (herein "Class"), brings this consumer protection class action against Defendants DJO Global, Inc. and DJO, LLC (collectively herein "DJO"), for their fraudulent distribution of dangerous products. DJO should warn consumers of the danger, sell its thick sole walking boot together with the Evenup as a complete package, reimburse defrauded customers (cost to repair),

1
2  and create a conspicuous webpage to process past personal injury claims in good faith.  Plaintiffs allege the following on information and belief.

### Introduction

3
4  2. DJO manufactures and distributes a thick sole walking boot (herein "boot")
5  both directly to consumers and also indirectly through prescribing medical
6  intermediaries. The thick sole is approximately 1-2 inches thick resulting in one
7  leg being longer than the other, aka leg length discrepancy. Walking in the boot
8  causes knee, hip, and back pain. In at least one case, the boot has caused
9  permanent injury resulting in a hip replacement operation.

10  3. Consumers don't know the boot causes harm. DJO does not warn consumers
11  or otherwise communicate the potential for pain or injury.

The Law Office of Scott Sanborn
www.scottsanborn.law





PROPER  (KINETIC CHAIN) ALIGNMENT

IMPROPER ALIGNMENT DUE TO
LEG LENGTH DISCREPANCY

CLASS ACTION COMPLAINT
FRAUDULENT DISTRIBUTION OF DANGEROUS PRODUCTS

## PARTIES

4. Plaintiff Representative Daniel Dreifort is a citizen of California and resides in San Diego County.

5. Defendant DJO Global, Inc. is a incorporated in Delaware and with its primary place of business in San Diego County, California.

6. Defendant DJO, LLC is a Delaware limited liability company registered to do business in California. DJO, LLC's member is DJO Global, Inc., a citizen of both Delaware and California.

7. DJO Global, Inc. and DJO, LLC are referenced together as "DJO" because there's no distinction for liability purposes. They are each individually liable for every allegation herein. DJO Global, Inc. is a holding company. DJO, LLC purports to be owned by DJO Global, Inc. DJO, LLC purports to be a manufacturer and distributer of orthopedic rehabilitation products, which includes the thick sole walking boots. DJO Global, Inc. also, purports to manufacture and distribute the same. Both companies are located at the same address with the same employees. The DJO website uses the name DJO Global, Inc. and DJO, LLC interchangeably at least once. The website, www.djoglobal.com, purports to be wholly owned by DJO Global, Inc. However, at the bottom right hand corner of each page, "DJO, LLC" is written in large bold letters suggesting it is the owner. Many of the product instructions are labeled, "DJO GLOBAL" then followed on the next line with, "DJO, LLC" and then followed again on the next line, "A DJO Global Company." DJO, LLC is the alter ego of DJO Global, Inc. Additionally, fraud, which is alleged in this complaint, is capable of piercing either company's veil pursuant to Delaware laws.

8. This Complaint shall be interpreted as alleging each Defendant company is liable, jointly and severally, for all allegations.

The Law Office of Scott Sanborn
www.scottsanborn.law

## JURISDICTION & VENUE

9. This court has Subject Matter Jurisdiction pursuant to the Class Action Fairness Act. The amount in controversy is likely in excess of $5 million. The number of Class members is likely in excess of 100. There is minimum diversity because at least one of the class members is a citizen of another state.

10. Personal jurisdiction is established because all named parties reside in California.

11. Venue is proper because all named parties reside in San Diego County.

12. All allegations occurred within the applicable statute of limitations.

## FACTUAL BACKGROUND

13. Plaintiff Daniel Dreifort sought medical treatment for an ankle injury. He was prescribed an Aircast boot, manufactured by DJO.  No one told Mr. Dreifort of the risk for a secondary injury as a result boot use. Nor did anyone tell him about the Evenup shoe leveler.

14. After wearing the boot six days, Mr. Dreifort herniated a disk in his back. (Note: Mr. Dreifort had previous disk problem in 2007 and again in 2013) The boot put him out of commission, in pain for two weeks.

15. Mr. Dreifort subsequently purchased the Evenup. Mr. Dreifort believes the Evenup would have prevented the back injury, or at least lessened or delayed it. The Evenup is a product designed to equalize a patient's healthy limb length and reduce body strain while walking in a cast or walker.

16. Mr. Dreifort's story is typical among the users of DJO manufactured thick sole boots. See Exhibit C, Evenup Consumer Reviews. The typical user seeks treatment for a lower limb injury and is prescribed DJO boot. Because the doctor is not warned by DJO, the doctor consequently prescribes the boot to the patient without a warning. The patient uses the boot and experiences pain in their knees, hips, and back. The patient is not aware that the pain was caused by

The Law Office of Scott Sanborn
www.scottsanborn.law

an unsafe product. Nor are they aware it could feasibly be relieved with the use of an Evenup had they known.

17. In other cases, DJO distributes the boot directly to the consumer, without a doctor, through their website, www.betterbraces.com. Boots are also readily available to the consumer through 2-day delivery from www.amazon.com.



Smart Healing
*with Every Step*

## CLASS ALLEGATIONS

18. Plaintiff Daniel Dreifort represents the following Class and sub-classes.

19. The Class, as used herein, shall include any person in the United States who received a DJO boot.

20. The "Class" as used, references all three sub-classes. The sub-classes are distinguished by the various statutes of limitations. The sub-classes are necessary in order to represent the interests of all potential members who may otherwise be excluded by the statute of limitations if only one class was defined.

    a. *Sub-Class A*: is all members within two-year statute of limitations.

    b. *Sub-Class B*: is all members within three-year statute of limitations.

    c. *Sub-Class C*: is all members within four-year statute of limitations.

21. Note that a person may be a member of multiple sub-classes. For instance, Class Representative Mr. Dreifort is a member of all three sub-classes because his injuries fall within the two-year statute of limitations which inherently falls

The Law Office of Scott Sanborn
www.scottsanborn.law

The Law Office of Scott Sanborn
www.scottsanborn.law

within the three- and four-year statute of limitations. As such, Sub-Class C would be the largest sub-class, followed by Sub-Class B and then Sub-Class A.

22. <u>Ascertainability</u>- The Class will be ascertained through the records of distribution DJO is required to maintain for its walking boots. Alternatively, the Class will be ascertained through DJO's customer billing records and financial reports. Contingently, it will be ascertained through Plaintiff's advertisements. The method of last resort is to simply enjoin the unlawful conduct and require DJO to create a website to process claims just as we have initially requested in the demand letters.

23. <u>Numerous</u>- As previously plead establishing CAFA jurisdiction, the Class is likely in excess of 100 persons. Based on DJO's claims of being a leading distributor of boots and the number of consumer complaints, it is almost certain that more than 100 persons have received a DJO boot in the United States. If Plaintiff had any doubt less the Class As such, the Class is so numerous that joinder is impractical.

24. <u>Commonality</u>- The questions of law and fact are common to all the people given a DJO boot in the United States. All people given a DJO boot suffer the same injury by receiving an incomplete, asymmetrical, dangerous product. The answers to the following questions will resolve the matter central to the issue for all members of the Class in a single stroke.

    a. Whether DJO thick sole boots are dangerous.

    b. Whether DJO made false representations.

    c. Whether DJO made misleading or incomplete representations to consumers.

    d. Whether DJO had a duty to disclose product dangers to consumers.

    e. Whether DJO had knowledge of the product dangers.

    f. Whether DJO intended to induce reliance.

CLASS ACTION COMPLAINT
FRAUDULENT DISTRIBUTION OF DANGEROUS PRODUCTS

g. Whether DJO makes money when consumers suffer secondary injury.

h. Whether DJO makes money from Evenup sales.

i. Whether DJO makes money when consumers have knee or hip replacements.

j. Whether DJO warned doctors.

k. Whether DJO marketed and sold directly to the consumers.

l. Whether DJO is liable for declaratory relief purposes.

m. Whether declaratory relief is adequately sufficient to preserve the claim of members with more severe personal injuries.

n. Whether the UCL, FAL, and CLRA are non-exclusive remedies that will not prejudice common law remedies for atypical members who suffered more severe bodily injury.

25. <u>Typicality</u>- Mr. Dreifort received a DJO boot in the United States in 2018. Mr. Dreifort suffered back injury because no one warned him the boot was dangerous. Mr. Dreifort has standing for each of the causes of action and has standing for each sub-class. His injury is typical of the class. To the extent his injury is not typical, he seeks declaratory relief on behalf of the atypical members of the class.

26. <u>Adequacy</u>- Mr. Dreifort is an adequate representative because he lives in San Diego County where he is geographically positioned to maintain this class action. Mr. Dreifort acknowledges his fiduciary duty to the class and is ready to make decisions on their behalf. His motive is to correct the unlawful conduct of Defendants and preserve the interests of past, present, and future DJO boot users.

27. <u>Predominance & Superiority</u>- The questions of law and fact that are common to the Class predominate over individual questions of law and fact. To the extent there may be any individual questions of fact, this class action addresses the

The Law Office of Scott Sanborn
www.scottsanborn.law

CLASS ACTION COMPLAINT
FRAUDULENT DISTRIBUTION OF DANGEROUS PRODUCTS

The Law Office of Scott Sanborn
www.scottsanborn.law

question of law by making it common to all in the form of declaratory relief. This has the function of providing a superior method of resolving the infrequent individual questions of fact. Individualized litigation would create a risk of inconsistent and/or contradictory judgements arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and court system and the issues raised by this action. The damages or other financial detriment suffered by individual Class members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the claims against the Defendant. The injury suffered by each individual member of the proposed class is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the proposed Class to individually redress effectively the wrongs to them. Even if the members of the proposed Class could afford such litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. Individualized litigation would force patients to make public otherwise confidential medical information thereby discouraging redress. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

28. Unless the Class is certified, Defendant will retain monies received as a result of Defendant's unlawful and deceptive conduct alleged herein. Unless a class- wide injunction is issued, Defendant will also likely continue to engage in unlawful and misleading business practices, and members of the Class will continue to be misled, harmed, and denied their rights under California law.

29. Further, Defendant has acted or refused to act on grounds that are generally applicable to the class so that declaratory and injunctive relief is appropriate to the Class as a whole, making class certification appropriate pursuant to Fed. R. Civ. P. 23(b)(2).

<u>**FIRST CAUSE OF ACTION**</u>

<u>FRAUD</u>

<u>Sub-Class B Plaintiffs (3 yr SOL) against all Defendants</u>

30. Plaintiff repeats, re-alleges, and incorporates by reference the above allegations as if fully stated herein.

31. DJO falsely represented that their boots enable a normal gait.



## AIRCAST WALKING BRACE : *Positioning and Value Proposition*

### ● Positioning Statement
- Smart Healing With Every Step

### ● Value Proposition
- The clinically proven Aircast Walking Braces have continuously advanced the science of pneumatic healing for over 30 years. The uniquely layered aircells can be individually custom-inflated, while the multi-radius rocker sole and anatomical design promotes superior offloading for a more normal gait, allowing smart healing with every step.

COMPANY CONFIDENTIAL

CLASS ACTION COMPLAINT
FRAUDULENT DISTRIBUTION OF DANGEROUS PRODUCTS

The Law Office of Scott Sanborn
www.scottsanborn.law

32. DJO falsely represented their boots minimize hip differential.



## SoftStrike Technology

A patented grid design puts a matrix of shock-absorbing material in direct contact with the heel, providing structured cushioning that reduces heel loading and helps prevent impact-related stresses.[3]

Heel strike is absorbed and dissipated by the patented SoftStrike technology.

Mid-stance section is designed to minimize hip differential and knee flexion movement.[3]

Toe-off section continues the rocking motion, enhancing mobility for the continuation of everyday tasks.



Non-marking, skid resistant rubber tread for greater traction and longer wear.

Low-profile rocker sole enables a normal walking gait with less forefoot angulation, preventing excessive hyperextension of the knee.[3]

33. DJO fraudulently omitted that thick sole boots are dangerous and cause secondary injury or pain.

34. DJO had a duty to disclose a warning to the consumer because they made partial representations about the safety of the product which was likely to mislead.

35. DJO makes partial representations that are misleading because they suggest that the boot is safe and do not warn of the potential for secondary injury or harm.

36. DJO advertised the false claims, to the public, from their website.

37. DJO had exclusive knowledge of material facts not known to consumers.

38. DJO had exclusive knowledge of material facts not reasonably accessible to the consumers.

The Law Office of Scott Sanborn
www.scottsanborn.law

39. DJO has exclusive knowledge that their thick sole boot caused body strain.

40. DJO marketed and sold a product exclusively intended to remedy the defect caused by their walking boots.



41. DJO actively concealed the potential for harm publishing "CONTRAINDICATIONS: NA" in the manufacturer's instructions on some boot models.

42. DJO actively concealed that their boots cause injury by advertising the boots are clinically proven to provide pain relief and improve healing time.

43. "DJO Global is a leading provider of high quality walking braces. The Aircast family of premium walking braces are clinically proven to reduce swelling, improve pain relief, and improve healing time." DJO promo video, from their website, referencing all Aircast walking boot models.

44. "… and a rocker sole promotes a natural walking style for smart healing at every step." DJO promo video, from their website, referencing all Aircast walking boot models.

45. The defect is central to the product's function. The thick sole causes secondary pain and injury. It does not improve pain relief for the secondary injury. It does not improve healing time for the secondary injury. It does not minimize hip differential, it causes hip differential. It does not enable a normal gait. I causes an abnormal gait. It's not smart healing with every step.

The Law Office of Scott Sanborn
www.scottsanborn.law

46. DJO's representations and failure to disclose are regarding product safety and are material in that a consumer would likely take different actions in order to avoid additional pain and injury.

47. DJO does not disclose the potential for harm to physicians or other healthcare professionals.

48. Plaintiff Daniel Dreifort, along with the Class were not aware of the risk for injury by using the boot.

49. DJO intended to induce Mr. Dreifort and other class members as evidenced by their additional profits. DJO is incentive to conceal the product dangers because DJO gets more money when patients hurt themselves. DJO profits from and sells other products intended to address injuries caused by their thick sole walking boots. DJO sells the Evenup product separately, intended to "equalize a patient's healthy limb length and reduce body strain while walking in a cast or walker…"

50. DJO also profits from and sells knee and hip implants for the patients who suffer permanent knee and hip injury.



51. Physicians, patients, and consumers would take efforts to prevent the harm caused by the boot if they were warned of the potential harm.

The Law Office of Scott Sanborn
www.scottsanborn.law

52. Mr. Dreifort, either would not have worn the boot or he would have purchased an Evenup product earlier.

53. Mr. Dreifort suffered injury by the way of pain and herniated disk in his back. He also spent additional money to purchase an Evenup product.

54. Mr. Dreifort and the entire Class all suffered harm by acquiring a dangerous product that caused a secondary injuries, injuries central to the product's function.

55. With regards to this Fraud Cause of Action, Mr. Dreifort seeks declaratory relief in order to establish liability, against DJO, on behalf of himself and the Class. Declaratory relief is sought in order to ensure that Class members are not prejudiced by this action so they may seek damages individually.

## SECOND CAUSE OF ACTION

### FALSE ADVERTISING LAW (Bus. & Prof. Code § 17500 et seq.)

### Sub-Class B Plaintiffs (3 yr SOL) against all Defendants

56. Plaintiff repeats, re-alleges, and incorporates by reference the above allegations as if fully stated herein.

57. DJO made untrue and misleading representations, about the boot safety quality, to the public through their website, product catalog, product instructions, advertisement videos, and other means.

58. DJO failed to make complete truthful representations which would indicate the product should be used in conjunction with a separate product, Evenup.

59. DJO knew or should have known its false representations were indeed untrue.

60. DJO intended to induce members of the public to believe that the product is safe and complete in its current state.

61. DJO failed to produce the type of product they advertised when they failed to include an Evenup and when they failed to diclose the dangers to the consumer.

62. Mr. Dreifort and the Class suffered harm as a result of DJO's false advertising.

The Law Office of Scott Sanborn
www.scottsanborn.law

# THIRD CAUSE OF ACTION

## UNFAIR COMPETITION LAW (Bus. & Prof. Code § 17200 et seq.)

### Sub-Class C Plaintiffs (4 yr SOL) against all Defendants

63. Plaintiff repeats, re-alleges, and incorporates by reference the above allegations as if fully stated herein.

64. DJO engaged in unlawful business acts and practices.

65. DJO engaged in unfair business acts and practices.

66. DJO engaged in fraudulent business acts and practices.

67. DJO engaged in unfair, deceptive, untrue, and misleading advertising.

68. DJO engaged in activity prohibited by the FAL.

69. Mr. Dreifort and the Class suffered harm because of DJO's unfair business acts.

# FOURTH CAUSE OF ACTION

## CONSUMER LEGAL REMEDIES ACT (Civ. Code § 1750 et seq.)

### Sub-Class B Plaintiffs (3 yr SOL) against all Defendants

70. Plaintiff repeats, re-alleges, and incorporates by reference the above allegations as if fully stated herein.

71. Plaintiff's counsel sent DJO Global, Inc. and DJO, LLC each the requisite Notice and Demand to correct their unlawful conduct and remedy their wrongs. Plaintiff's counsel completed the requisite pursuant to CLRA requirements.

72. The Notice notified DJO that their products are unlawful pursuant to Civ. Code Sec 1770 subdivision (a) paragraphs (5),(7), and (9).

73. DJO represented that goods have characteristics, uses, benefits, or qualities which they do not have.

74. DJO represented that goods are of a particular standard, quality, or grade when they are of another.

75. DJO advertised goods with the intent not to sell them as advertised.

The Law Office of Scott Sanborn
www.scottsanborn.law

CLASS ACTION COMPLAINT
FRAUDULENT DISTRIBUTION OF DANGEROUS PRODUCTS

76. DJO had knowledge of the false and misleading representations when they sought to profit by selling a product solely intended to fix a problem the created and they failed to disclose.

77. DJO profits when consumers suffer from knee, hip, and back injuries, because they are able to sell their other products such as surgical implants at an alarming rate.

78. DJO has an incentive not to advertise it's boots truthfully and lawfully.

79. Class members are inherently disabled pursuant to the CLRA as illustrated by their initial need for the boot. Additionally many Class members are also elderly.

80. Mr. Dreifort suffered injury as a result of DJO's unlawful representations.

## FIFTH CAUSE OF ACTION

## PRODUCT LIABILITY

## Sub-Class A Plaintiffs (2 yr SOL) against all Defendants

81. Plaintiff repeats, re-alleges, and incorporates by reference the above allegations as if fully stated herein.

82. Design- DJO manufactures, distributes, and markets a dangerous product. The thick sole boot is unreasonably dangerous because a viable safer alternative exists. DJO manufactures and distributes a boot with a thinner sole called the Aircast Airselect Elite. This product is superior and DJO advertises it as such. The Aircast Airselect Elite is still dangerous, just not as dangerous as the boots with the thicker sole. It is practical to manufacture and distribute the superior design as demonstrated by DJO's likewise behavior. The retail cost of the boot is slightly increased. However, it is not plausible that a thinner sole, with less rubber, actually costs more to manufacture.

83. As a result of its defective design, Mr. Dreifort suffered an injury.

The Law Office of Scott Sanborn
www.scottsanborn.law

84. Warning- The boot has a high utility in that it is effective in addressing the user's primary injury. Regarding its primary function, the boot gets high praises from users. DJO does not adequately warn consumers of the risk of injury. In fact, DJO does not warn consumers at all. Nor do they warn prescribing physicians.

85. As a result of the inadequate warning, Mr. Dreifort suffered an injury.

## PRAYER FOR RELIEF:

Plaintiffs seek non-exclusive remedies pursuant to the FAL, UCL, & CLRA. Additionally, Plaintiffs seek declaratory relief establishing liability pursuant to both common law causes of action, Fraud and Products Liability.

1. CLRA Actual Damages- an amount to be determined, likely in excess of $5 million. The amount will be measured as the cost to repair a defective product. Alternatively, it will be measured as value promised minus the value received. We will take the amount of DJO boots distributed (within the SOL), then multiply that number by approximately $29.99 +taxes +shipping, the cost of an Evenup.

2. CLRA Punitive Damages- an amount to be determined based on all relevant factors including but not limited to fraud and the egregiousness of their behavior prioritizing profit over consumer safety.

3. CLRA Disabled (Cal Civ Code § 1780(b))- an amount to be determined once the Class is quantified. Plaintiffs seek $5,000 for each disabled Class member who is found to have substantially suffered. All Class members are likely considered disabled and should be presumed as such given that they needed the boot to begin with. (Note: All CLRA remedies above are cumulative, non-exclusive, in addition to all other remedies.)

CLASS ACTION COMPLAINT
FRAUDULENT DISTRIBUTION OF DANGEROUS PRODUCTS

The Law Office of Scott Sanborn
www.scottsanborn.law

The Law Office of Scott Sanborn
www.scottsanborn.law

4. <u>FAL Restitution</u>- an amount to be determined based on the size of the Class. The measure of restitution will be the difference in what was paid and what a reasonable consumer would pay, multiplied by the number of boots distributed. The difference in value per boot is $29.99 +taxes +shipping because that is an amount to make the product complete as advertised to a reasonable consumer. (Note: All FAL remedies are cumulative, non-exclusive, in addition to other remedies.)

5. <u>UCL Restitution</u>- an amount to be determined based on the size of the Class. The measure of restitution will be the difference in what was paid and what a reasonable consumer would pay, multiplied by the number of boots distributed. The difference in value per boot is $29.99 +taxes +shipping because that is an amount to make the product complete as advertised to a reasonable consumer. (Note: All UCL remedies are cumulative, non-exclusive, in addition to other remedies.)

6. <u>Fraud Declaratory Relief</u>- so members are not prejudiced from bringing their individual personal injury claims.

7. <u>Products Liability Declaratory Relief</u>- so individual members may choose between which common law claim best protects them .

8. <u>Treble Damages Disabled (Civ. Code § 3345)</u>- an amount to be determined based on the size of the Class.

9. <u>Pre-judgement interest</u>.

10. <u>Attorney's fees</u>.

11. <u>Costs of this suit</u>.

12. <u>Injunction</u>- an order enjoining Defendant's unlawful methods, acts, or practices.

13. <u>CLRA Discretionary</u>- for such other and further relief as this Court may deem fair, just, equitable, and proper.

# DEMAND FOR JURY TRIAL

Plaintiffs request trial by jury.

Dated: October 18, 2018

/s/ Scott Sanborn

_____

Scott Sanborn
Attorney for Plaintiffs

CLASS ACTION COMPLAINT
FRAUDULENT DISTRIBUTION OF DANGEROUS PRODUCTS

The Law Office of Scott Sanborn
www.scottsanborn.law

## CIVIL CODE SECTION 1780(d) AFFIDAVIT

I, Scott Sanborn, attorney for Plaintiff Daniel Dreifort in the above titled action, am authorized to execute this affidavit on his behalf. This action is commenced in the county in which DJO Global, Inc., and DJO, LLC both reside as to their principal place of business. San Diego is also the county which Defendants are doing business and where a substantial portion of the events alleged in this action occurred. I declare under the penalty of perjury that the above is true and correct. Executed in October 18, 2018 in San Diego, California.

/s/ Scott Sanborn

_____

Scott Sanborn
Attorney for Plaintiffs

CLASS ACTION COMPLAINT
FRAUDULENT DISTRIBUTION OF DANGEROUS PRODUCTS

The Law Office of Scott Sanborn
www.scottsanborn.law