UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL DREIFORT, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DJO GLOBAL INC., DJO, LLC, and DOES 1–20,<br><br>Defendants. | Case No.: 3:18-cv-02393-BTM-KSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FAC**<br><br>**[ECF NO. 15]** |

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 15 ("Mot. to Dismiss FAC")). For the reasons discussed below, the motion is **GRANTED IN PART AND DENIED IN PART**.

## I.  BACKGROUND

Defendants DJO Global, Inc. and DJO, LLC (collectively referred to as "DJO") manufacture orthopedic rehabilitation boots with soles that are thicker than 2.6 cm. (ECF No. 12 ("FAC"), ¶¶ 1, 9, 12, 14.) DJO sells its boots "directly to consumers and indirectly through prescribing medical intermediaries." (*Id.* at ¶ 13.) On December 1, 2017, Plaintiff Daniel Dreifort injured his right ankle. (*Id.* at ¶ 57.) On March 7, 2018, Plaintiff went to "UCSD La Jolla USS Sports Medicine

for treatment of his ankle injury," where he was prescribed an Aircast AirSelect Standard orthopedic rehabilitation boot manufactured by DJO. (*Id.* at ¶¶ 61, 63.) The sole of the boot was approximately 5 cm thick. (*Id.* at ¶ 17.) Plaintiff wore the boot from March 7 to March 13, 2018. (*Id.* at ¶ 74.) On March 13, 2018, Plaintiff suffered from a back injury caused by the "thick sole" of the boot, which "caused leg length discrepancy which constantly put additional strain on Plaintiff's back." (*Id.* at ¶ 75.) Plaintiff had previously suffered "disk herniation" problems in 2007 and 2013. (*Id.*) Plaintiff alleges that his secondary injury is "typical among the users of DJO manufactured thick sole [b]oots." (*Id.* at ¶ 99.) He states that DJO did not disclose to him "the risk of secondary injury" or that the boot "causes leg length discrepancy," and that DJO also did not warn healthcare providers of such risks. (*Id.* at ¶¶ 90-91, 99.) After Plaintiff's health insurance covered partial payment for the boot, DJO billed Plaintiff directly for $44.52, which Plaintiff paid. (*Id.* at ¶¶ 86-87.)

On March 27, 2018, "Plaintiff notified UCSD of his March 13, 2018 back injury from the [b]oot" and "[t]hat same day, a different UCSD healthcare provider responded to Plaintiff's concerns by recommending Plaintiff purchase a product called Evenup available on Amazon.com for about $20-30." (*Id.* at ¶¶ 82-83.) Evenup is a product that DJO sells separately and is intended to "equalize a patient's healthy limb length and reduce body strain while walking in a cast or walker." (*Id.* at ¶ 152.) On May 13, 2018, "Plaintiff purchased the Evenup from www.amazon.com" and paid "$16.99 plus $1.32 in taxes." (*Id.* at ¶ 88.) Plaintiff never used the Evenup but believes it "would have prevented Plaintiff's back injury, or at least lessened or delayed it." (*Id.* at ¶¶ 89, 98.) Plaintiff states that "DJO never disclosed to [him] the existence of the Evenup" and that he "only learned of the Evenup from UCSD after it was too late." (*Id.* at ¶ 93.)

Plaintiff brings the following class action causes of action against DJO: (1) fraudulent concealment, (2) violations of California's False Advertising Law, (3)

violations of California's Unfair Competition Law, (4) violations of the Consumer Legal Remedies Act, and (5) product liability. DJO moves to dismiss Plaintiff's FAC in its entirety under Fed. R. Civ. P. 12(b)(6) and 12(b)(1), or alternatively, moves to strike Plaintiff's class allegations under Fed. R. Civ. P. 12(f). (Mot. to Dismiss FAC.)

## II.  Rule 12(b)(1) Standing

The Court first addresses DJO's argument that Plaintiff's class action claims should be dismissed for lack of standing to the extent that the claims encompass models of boots other than the one Plaintiff purchased, because Plaintiff would not have standing as to products he never purchased and used. (*See id.* at 14-15.) In addition to the Aircast Airselect Standard, Plaintiff identifies more than 30 other DJO boot models that he states are subject to his class claims. (FAC, ¶ 31.) He states that all of the identified boot models "share materially common deficiencies with the specific model that injured Plaintiff," in part because they "have a sole thicker than 2.6 cm." (*Id.* at ¶¶ 32, 34.) At the pleading stage, the Court declines to dismiss Plaintiff's class allegations as to the additional identified boot models, which Plaintiff alleges are materially similar to the Aircast Airselect Standard that Plaintiff claims injured him. The Court finds it would be more appropriate to address this argument after discovery, and at the class certification stage.

## III.  Rule 12(b)(6) Failure to State a Claim

**A.  Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a legal claim. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in the plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal is appropriate only where "the complaint fails to

state a claim to relief that is plausible on its face." *Curry v. Yelp Inc.*, 875 F.3d 1219, 1224–25 (9th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In addition, a plaintiff who alleges fraud must meet the heightened pleading requirements of Rule 9(b). Under that Rule, a plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requires the pleader to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks and citations omitted). Rule 9 exists to give defendants notice of the specific misconduct with which they have been accused. *Id.*

Even if fraud is not a necessary element of a claim, the plaintiff must still comply with Rule 9(b) if he "allege[s] in the complaint that the defendant has engaged in fraudulent conduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). This is true when the plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." *Id.* This renders the claim "grounded in" or "sounding in" fraud. *Id.* A claim grounded in fraud must meet the heightened pleading requirements of Rule 9(b). *Id.* at 1103–04. "Any averments which do not meet that standard should be disregarded or stripped from the claim for failure to satisfy Rule 9(b)." *Kearns*, 567 F.3d at 1124 (internal quotation marks and citations omitted).

**B. Fraudulent Concealment**

Plaintiff's first cause of action is for fraudulent concealment. (Compl., ¶¶ 115–169.) "The elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or nondisclosure); (b)

knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Kearns*, 567 F.3d at 1126 (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951, 974 (1997)). To allege reliance in a fraudulent concealment claim, a plaintiff "need only prove that, had the omitted information been disclosed, one would have been aware of it and behaved differently." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993).

      First, Plaintiff alleges that DJO "actively concealed the risk of secondary injury when they falsely advertised that their SoftStrike technology, used in the Aircast Airselect Standard, enables a normal walking gait when the Aircast Airselect Standard actually causes an abnormal walking gait due to the leg length discrepancy," "fraudulently omitted that thick sole Boots are dangerous and cause secondary injury or pain," and "actively concealed that their Boot causes injury by advertising the Boot is clinically proven to provide pain relief and improve healing time." (FAC, ¶¶ 127, 131, 141.) Second, Plaintiff alleges that DJO had knowledge of these falsities. (*Id.* at ¶ 125.) Third, Plaintiff alleges DJO's intent to defraud. (*Id.* at ¶ 151.) Fourth, Plaintiff alleges that he "would not have worn the [b]oot or he would have purchased an Evenup product earlier," "if DJO had properly disclosed the risk of secondary injury or existence of the Evenup." (*Id.* at ¶¶ 160–62.) Fifth, Plaintiff pleads resulting damage. (*Id.* at ¶¶ 163–64.) In addition, in compliance with Rule 9(b), Plaintiff describes the DJO advertisements with allegedly misleading information (*id.* at ¶¶ 128–29), specifies the specific boot models that contain the alleged design defect of soles thicker than 2.6 cm (*id.* at ¶¶ 14, 31), alleges that DJO had exclusive knowledge of the facts underlying his claim and specifies how he obtained his boot from DJO through his medical provider and health insurance (*id.* at ¶¶ 61–73, 86, 137), and specifies how and when he suffered his injuries from the boot (*id.* at ¶¶ 74–75). While DJO seeks dismissal of Plaintiff's FAC in its entirety, it does not identify or argue that there are any specific deficiencies with Plaintiff's fraudulent concealment cause of action.

Accordingly, the Court finds that Plaintiff's fraudulent concealment cause of action is adequately pled.

### C. False Advertising Law and Consumer Legal Remedies Act

The Court previously dismissed Plaintiff's FAL and CLRA claims with leave to amend because they suffered "from factual deficiencies with respect to the relevant boot model, how Plaintiff acquired the boot, and when the relevant events took place." (ECF No. 6 at 15–16.) Plaintiff's FAC now identifies the DJO Aircast Airselect Standard as the boot model that caused his injuries (FAC, ¶ 61), specifies that he acquired the boot when it was prescribed to him by UCSD La Jolla USS Sports Medicine to treat a December 1, 2017 injury to his right ankle (*id.* at ¶¶ 57–71), specifies that he made a direct payment of $44.52 to DJO for the boot, after partial payment was covered by his health insurance (*id.* at ¶¶ 86–87), and specifies the dates that he wore the boot and when and how the boot injured his back (*id.* at ¶¶ 74–81). While DJO seeks dismissal of Plaintiff's FAC in its entirety, it does not identify or argue that there are any specific deficiencies with Plaintiff's FAL and CLRA causes of action. Accordingly, the Court finds that Plaintiff's FAL and CLRA causes of action are adequately pled.

### D. Unfair Competition Law

The Court previously dismissed Plaintiff's UCL claim with leave to amend because it was a "shotgun pleading" that simply "allege[d] the elements of a UCL claim in a conclusory manner and without any factual support." (ECF No. 6 at 15–16.) Plaintiff's FAC now identifies the specific actions, omissions, and statements from DJO that he alleges violate the UCL. (*See* FAC, ¶¶ 193–212.) While DJO seeks dismissal of Plaintiff's FAC in its entirety, it does not identify or argue that there are any specific deficiencies with Plaintiff's UCL cause of action. Accordingly, the Court finds that Plaintiff's UCL cause of action is adequately pled.

//
//

### E. Product Liability

"The elements of a strict products liability cause of action are a defect in the manufacture or design of the product or a failure to warn, causation, and injury." *Nelson v. Superior Court*, 144 Cal. App. 4th 689, 695 (2006). Plaintiff's product liability cause of action is premised on a design defect and failure to warn.

    a. Design Defect

The Court previously dismissed Plaintiff's design defect claim with leave to amend because he failed to indicate which of the two tests under California law he was basing his claim on and did not indicate why the boot's design was defective. (ECF No. 6 at 17.) Plaintiff's FAC now alleges that DJO's boots are defective under both the consumer expectations test and the risk-benefit test. "Under the consumer expectations test, plaintiff should describe how the product failed to meet the minimum safety expectations of an ordinary consumer of that product. Similarly, under the risk-benefit test, a plaintiff should allege that the risks of the design outweigh the benefits, and then explain how the particular design of the product caused plaintiff harm." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prod. Liab. Litig.*, 754 F. Supp. 2d 1208, 1220 (C.D. Cal. 2010) (internal citations and quotations omitted).

For the consumer expectations test, Plaintiff's FAC alleges that DJO's use of a sole with a thickness greater than 2.6 cm creates leg length discrepancies and gait asymmetries that put additional strain on and risk secondary injuries to the knees, hips, and back. (FAC, ¶¶ 242, 244–252.) Plaintiff alleges that ordinary consumers do not expect such secondary injuries from "a product intended to facilitate physical rehabilitation." (*Id.* at ¶ 252.) For the risk-benefit test, Plaintiff similarly alleges that the additional strains caused by the leg length discrepancies and gait asymmetries from the greater than 2.6 cm thick sole of his DJO boot herniated a disk in his back. (*Id.* at ¶¶ 257.) Plaintiff alleges that the resulting secondary injuries can be severe enough to require a hip replacement, and can

result in new or worsened pain. (*Id.* at ¶¶ 256–260.) DJO does not identify or argue that there are any specific deficiencies with Plaintiff's design defect cause of action. Accordingly, the Court finds that Plaintiff's design defect cause of action is adequately pled.

### b. Failure to Warn

Manufacturers are "strictly liable for injuries caused by their failure to warn of dangers that were known to the scientific community at the time they manufactured and distributed their product." *Johnson v. Am. Standard, Inc.*, 43 Cal. 4th 56, 64 (2008). The Court previously dismissed Plaintiff's failure to warn claim with leave to amend because Plaintiff referenced a 2018 "Leg Length Discrepancy Study" in his complaint but had not pled that the study was "generally recognized" and the "prevailing best scientific medical knowledge available at the time of manufacture and distribution" and did "not indicate that this study predated DJO's manufacture and distribution of the boot or boots at issue." (ECF No. 11 at 19.) Plaintiff's FAC now references and attaches one additional 2018 study about joint pain associated with controlled ankle movement walker boot wear (*see* FAC, Exh. A), but still fails to allege that any of the referenced studies (1) are generally recognized, (2) reflect the best scientific medical knowledge available at the time of manufacture and distribution, and (3) predate DJO's manufacture and distribution of the boots at issue. Accordingly, Plaintiff's failure to warn products liability cause of action is **DISMISSED WITH LEAVE TO AMEND**.

### IV.  Rule 12(f)

DJO's Motion to Dismiss does not argue that there are any specific deficiencies with how any particular causes of action are pled. Rather, the predominant focus of DJO's argument is that Plaintiff's entire action should be dismissed because it is premised on personal injury, which, along with Plaintiff's theory of damages, would require individual inquiries that would make class resolution inappropriate. (*See* Mot. to Dismiss FAC at 5–14.) Under Rule 12(f), a

court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "In general, however, striking the pleadings is considered an extreme measure, and Rule 12(f) motions are therefore generally viewed with disfavor and infrequently granted. Moreover, dismissal of a class at the pleading stage is rare because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Jessop v. Giggle, Inc.*, 2015 WL 11622421, at *1 (S.D. Cal. Feb. 2, 2015) (internal citations and quotations omitted). *See also Mason v. Ashbritt*, Inc., 2020 WL 789570, at *4 (N.D. Cal. Feb. 17, 2020) ("in general, class allegations are not tested at the pleading stage and are instead scrutinized after a party has filed a motion for class certification"). "Even where plaintiffs' class definitions are suspicious and may in fact be improper, plaintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery." *Valdez v. Harte-Hankes Direct Mktg./Fullerton, Inc.*, 2017 WL 10592135, at *4 (C.D. Cal. Dec. 21, 2017). Because Defendant's Rule 12(f) motion is based on the appropriateness of maintaining a class action, the Court declines to dismiss Plaintiff's class allegations at the pleading state. *See Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012) (denying a Rule 12(f) motion to strike class allegations because "class suitability issues are best resolved during a motion for class certification"); *Sulzberg v. Happiest Minds Techs. Pvt. Ltd.*, 2019 WL 6493984, at *2 (N.D. Cal. Dec. 3, 2019) (declining to dismiss class allegations at the pleading stage because "Defendant's attacks on Plaintiff's class allegations are better made in the context of a Rule 23 motion for class certification, after appropriate development of the record"); *Claiborne v. Water of Life Cmty. Church*, 2017 WL 9565337, at *14 (C.D. Cal. Aug. 25, 2017) (denying a Rule 12(f) motion to strike class allegations because "given the early stage of these proceedings, it is premature to decide whether this case may proceed as a class action before the FAC has been answered, discovery has

commenced, or a motion for class certification has been filed").

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's FAC is **GRANTED IN PART AND DENIED IN PART**. The Court **GRANTS** Plaintiff leave to amend his complaint as to the failure to warn products liability cause of action within 21 days of the entry of this order. Defendants shall file a response to the present or amended complaint within 21 days of the service of any amended complaint or the expiration of the 21-day period to amend, whichever comes first.

The Court notes its concern that this action may involve only personal injury damages, which if true, may make this action inappropriate for class resolution. It is unclear from Plaintiff's FAC whether he would have purchased the Evenup had Defendants disclosed the alleged defect when he obtained the boot, and therefore, it is unclear what, if any, economic damages Plaintiff has suffered. However, the Court elects to make a determination on the existence of any economic damages upon a fuller record after a limited discovery period. Accordingly, discovery as to Plaintiff's damages shall take priority, and any motion for class certification must be filed within 6 months of the filing of Defendant's answer to the complaint.

**IT IS SO ORDERED**.

Dated:  December 30, 2020

_____
Honorable Barry Ted Moskowitz
United States District Judge